IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JESUS MENDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00046 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| MICHAEL BRECKON, *et al.*, | ) | By: Hon. Norman K. Moon |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this action, *pro se* plaintiff Jesus Mendez, a federal prisoner, asserts civil rights claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). Mendez names as defendants six Federal Bureau of Prisons ("BOP") staff members, all of whom worked at the United States Penitentiary in Lee County ("USP Lee"), where Mendez was incarcerated at the time of the events in question. He alleges that the defendants have manufactured security issues as a basis to maintain general population inmates like him under the restrictive conditions and greatly reduced activities normally reserved for inmates in segregated confinement. Five of the six named defendants (Breckon, Leu, Hanger, Shortt, and Grace), through counsel, have filed a motion to dismiss, or in the alternative, for summary judgment.[1] Mendez has responded, making that motion ripe for disposition, and the defendants have replied. After review of the record, the court concludes that the defendants' motion must be granted on the ground that Mendez did not properly exhaust available administrative remedies before filing this lawsuit.[2]

---

[1] The sixth defendant, T. Hall, is not represented by counsel. USP Lee employs several individuals named T. Halls, and counsel states that officers were unable to identify which T. Hall was involved in the events alleged in Mendez's amended complaint.

[2] Because the failure to exhaust bars Mendez from pursuing any of his claims in the amended complaint, the court declines to address any of the other defenses raised in the defendants' motion.

I.  BACKGROUND

Mendez and a number of other USP Lee inmates jointly filed this civil action in January 2020. The court ordered that the action be severed so that each inmate's claims would proceed in a single civil action and required each inmate to prepay or agree to installment payments toward the applicable filing costs. On February 10, 2020, Mendez paid the full filing costs for his case. In June 2020, he filed an amended complaint, ECF No. 35.

Liberally construing Mendez's pleading, he alleges the following sequence of events on which he bases his *Bivens* claims. When Defendant Michael Breckon took over as warden of USP Lee, he allegedly "implement[ed] a complete breakdown of the institutional daily operations." *Id.* at 4. Staff was not disciplined for name-calling or beatings and torture of unspecified inmates. All educational and rehabilitative programing was stopped, as were cell movements. Breckon allegedly told inmates "that the only way to move out [of your cell] was to stab your cellie." *Id.* Inmates with known vulnerabilities were assigned to the general population, where they were, predictably, assaulted. In turn, inmates' acts of violence were used to justify lengthy lockdowns, restrictive conditions, and cancelation of privileges and programing. Breckon allowed overcrowding to develop by denying USP Lee inmates' requests for transfers. Overcrowded conditions fed the violence among inmates. Staff allegedly targeted inmates who complained of these conditions by planting drugs or weapons in their cells.

In August of 2019, defendants Acting Warden Leu, Associate Warden Hanger, and Captain Shortt implemented four lock-down cells ("LDC") in each general population housing unit, marked with red stripes. When the Special Housing Unit ("SHU") was full of inmates under discipline or in protective custody, an inmate pending assignment to SHU would be placed

in a housing unit LDC. When an inmate was placed into an LDC, staff implemented lockdown of that entire housing unit. F-Unit, where Mendez was housed, was targeted for lockdowns even when no inmate was placed in the LDC, which effectively turned F-Unit into a *de facto* SHU, because of "dislike by the executive staff." *Id.* at 7. Although F-Unit inmates were classified as general population and had no incident reports filed against them, they were subjected to the restrictive conditions intended for SHU inmates, such as limited showers, denial of educational and rehabilitative programing (in violation of the December 2018 First Step Act), denial of out-of-cell recreation, limited use of telephone, email, and law library materials, and denial of religious service attendance.

In F-Unit, Mendez was allegedly further targeted by Officers T. Hall and C. Grace, who allegedly trashed his cell and tampered with a legal document, in retaliation for some unspecified act. Higher ranking defendants failed to protect Mendez from these officers and allowed them to work in F-Unit more than ninety days running, in violation of the officer work rotation policy. According to Mendez, all of the practices of which he complains violate BOP program statements and other regulations.

Mendez's amended complaint alleges under *Bivens* that these events constituted violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. He also submits a set of documents labeled as Exhibit A that the court will construe and grant as a motion to supplement the amended complaint. As relief, Mendez seeks declaratory, injunctive, and monetary relief.

## II. DISCUSSION

According to Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss under Rule

12(b)(6) must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. The court has provided such notice to the parties.

Defendants have submitted, in support of their motion, a declaration by Destiny Spearen, the paralegal for the BOP's Consolidated Legal Center that provides legal services for regional BOP facilities, including USP Lee. *See gen.* Mem. Supp. Mot. Dism. Ex. A, Spearen Decl., ECF Nos. 44-1. Spearen has investigated Mendez's administrative remedy records and provides details about them. The court has considered Spearen's declaration, and therefore, must treat the defendants' motion as a motion for summary judgment.

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[3] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. Instead, the non-moving party "must produce not merely colorable but significantly probative evidence" from which a

---

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

reasonable jury could return a verdict in his favor. *Abcor Corp. v. Am Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

In addressing the summary judgment arguments, the court must hold Mendez's *pro se* amended complaint, "however inartfully pleaded" it may be, "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, Mendez "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Mere groundless generalizations and unsupported speculations cannot create a genuine issue of fact and are thus insufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). In response to a motion for summary judgment for failure to exhaust administrative remedies, a bare assertion that is "unsupported by any detail" will not satisfy a prisoner plaintiff's "burden of showing that remedies were unavailable." *Rodrigues v. Hamilton*, 7:20-cv-338, 2021 WL 413530, *6 (W.D. Va. Feb. 5, 2021).

The Prison Litigation Reform Act ("PLRA") requires a prisoner plaintiff to exhaust his available administrative remedies before bringing a civil action in federal court. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 1174, ____, 136 S. Ct. 1850, 1856 (2016).

5

The BOP's administrative remedy procedure is well-documented and straightforward, involving these stages: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. The first stage of a claim alleging staff misconduct requires the inmate to present his issue of concern "informally to the staff." 28 C.F.R. ¶ 542.13(a). Each Warden has established procedures for inmates at his institution to do so.

Second, if an inmate is unable to resolve his complaint informally, the next stage of the claim requires him to file a formal written complaint (an "administrative remedy request") with the institution. To do so, he should obtain and complete "the appropriate form (BP-9)" within twenty calendar days after the incident at issue and return it to his correctional counselor. *Id*. at ¶ 542.14(a), (c)(1), (4). The institutional warden or designee should provide a response.

Third, if dissatisfied with the warden's response to his BP-9 form, an inmate enters the third stage of the remedies procedure: he has two levels of appeal that he may pursue. Initially, he may appeal to the Regional Director within twenty calendar days of the Warden's BP-9 response, using a BP-10 form. "Sensitive issues can be filed directly at the regional level," without the inmate first pursuing remedies at the institutional level. Spearen Decl. at ¶ 6. If the inmate is not satisfied with the response he receives at the regional level, he may appeal the Regional Director's BP-10 response within thirty calendar days to the Office of General Counsel, using a BP-11 form. Appeal to the General Counsel is the final administrative appeal.

Spearen's declaration indicates that when an inmate properly files an administrative remedy form, it should appear in his filing history on the BOP's computer system, SENTRY. Spearen conducted an exhaustive review of remedy forms Mendez has filed, going back to before the year 2000 and onward to the present. She did not find any forms Mendez had

6

properly filed at the institutional level at USP Lee about the issues raised in the amended complaint in this case.

In his verified amended complaint, Mendez maintains that he filed a BP-8 (informal complaint) to his counselor on August 22, 2019, but that complaint form was never returned to him with a response. He reports that he thereafter filed a BP 9 (formal complaint) to the warden's office, but it "vanish[ed] and was never return[ed]" to him. Am. Compl. 3, ECF No. 35. Thereafter, Mendez submitted a BP-10 form to the Mid-Atlantic Regional office, explaining that his BP-8 and BP-9 forms filed at USP Lee (reporting acts of retaliation and staff planting weapons in cells and harassing inmates) had disappeared without any response. Mendez Ex. A 2, ECF No. 40. This BP-10 form was assigned Case No. 992052-R1. In the "REASON FOR APPEAL" box on the BP-10 form, and on an additional, separate sheet, Mendez complained that USP Lee was locking down inmates for twenty-two hours per day, without "programming, work, recreation, religious services, law library, education, [or] laundry," *id.*; that inmates had staged a strike by refusing any bologna or peanut butter sandwiches for five days; that administrative staff met with inmate gang leaders to work out a compromise so inmates could have more out-of-cell activities; that administrators blamed the long lockdowns on overflowing SHU housing; that SHU conditions punished many inmates for the acts of a few; that administrators went back on their promises and locked down F-Unit again; that staff were "planting weapons [and] drugs on inmates" and inmates were "grumbling." *Id.* at 3. Mendez stated that he wanted USP Lee "to stop locking down the population or units when SHU is full" and for each inmate to be made accountable only for his own actions. *Id.*

The respondent at the Regional Office rejected Mendez's BP-10 form, Case No. No. 992052-R1, for three reasons. *See gen. id*. at 1; Spearen Decl. at ¶¶ 5-6, ECF No. 44-1. First, it

7

raised more than one issue or incident report. The regional respondent advised Mendez to file separate requests or appeals for each unrelated issue or incident that he wanted reviewed. Second, the regional respondent found that Mendez's issues on the BP-10 form were not "sensitive" so as to be appropriately directed first to the regional level for review. Ex. A 1, ECF No. 40. Third, the respondent advised Mendez, "You must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level." *Id.*

Mendez did not heed the respondent's advice and attempt to renew his efforts to pursue BP-8 and BP-9 remedies at USP lee. Instead, Mendez filed an appeal to the Central Office, where it was assigned Case No. 992052-A1. *Id.* at 4. The respondent in that office rejected the appeal, stating, "Concur with rationale of regional office and/or institution for rejection. Follow directions provided on prior rejection notice." *Id.*; Spearen Decl. at ¶ 7.

Spearen asserts that review of Mendez's administrative remedy filing history on the BOP computer system reflected that Mendez had not filed any further administrative remedies regarding the issues in this lawsuit. Mendez has not offered any evidence to the contrary.

Based on the record before the court, it is clear that Mendez did not properly pursue each stage of the BOP remedy procedures that was available to him. First, even assuming without finding that he filed a BP-8 form and a BP-9 form at USP Lee, as he alleges, he did not properly file his BP-10 form to the regional office. This regional appeal improperly included multiple issues (lockdowns, food strikes, denied privileges, compromises with gang leaders, SHU cells in general population units, and falsified disciplinary charges for weapons and drugs). Regional appeals should focus on one issue and only one. Moreover, the regional response indicated that Mendez had another available administrative remedy—to return to the facility (USP Lee) and file the appropriate remedy forms to officials there. Yet, Mendez ignored these available

8

remedies. As his next attempted administrative remedy, he filed the same improper and multi-issue appeal to the Central Office. There, it was rejected for filing at the wrong level of review.[4]

Based on the undisputed evidence, the court concludes that Mendez has offered no evidence on which he could persuade a fact finder that he properly exhausted his administrative remedies as to his current claims before filing this lawsuit. Accordingly, the defendants are entitled to summary judgment on the ground that he failed to comply with the exhaustion requirement in 42 U.S.C. § 1997e(a) before filing this lawsuit. It is not clear from the record that Mendez could not return to USP Lee hereafter to attempt to exhaust administrative remedies about the conditions of which he complains in this civil action, if they still exist. Accordingly, the court will dismiss his *Bivens* claims without prejudice.

An appropriate order will be entered.

**ENTER**: September 20th, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The court also notes that according to the undisputed administrative remedies in the record, Mendez did not pursue any remedy appeals complaining about the specific actions of defendant T. Hall as alleged in the amended complaint. Accordingly, the court will summarily dismiss the claims against Hall without prejudice, pursuant to 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies.